IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil No. 3:19-cv-00055 |
| Plaintiff, | ) | |
| | ) | VERIFIED COMPLAINT FOR |
| v. | ) | FORFEITURE *IN REM* |
| | ) | |
| REAL PROPERTY, AND BUILDINGS | ) | |
| AND APPURTENANCES THERETO, | ) | |
| LOCATED AT 471 DRAPER VALLEY | ) | |
| ROAD, SELMA, OREGON; and | ) | |
| | ) | |
| REAL PROPERTY, AND BUILDINGS | ) | |
| AND APPURTENANCES THERETO, | ) | |
| LOCATED AT 1380 DEER CREEK | ) | |
| ROAD, SELMA, OREGON; | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, United States of America hereby files and serves this VERIFIED

COMPLAINT *IN REM* and alleges as follows:

## I.   **NATURE OF THE ACTION**

1.    This is an action to forfeit and condemn specific property to the use and

benefit of the United States of America ("Plaintiff") for involvement, as set forth

below, in violation of 21 U.S.C. § 846 (attempt and conspiracy) and

§ 841(a)(1)(prohibited acts).

2.    The Defendant Real Property is believed to be subject to forfeiture

pursuant to 21 U.S.C. § 881(a)(6), as proceeds of money, negotiable instruments,

securities, or other things of value furnished or intended to be furnished by a person

in exchange for a controlled substance, in violation of subchapter I – Control and

1

Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 –
Food and Drugs, of the United States Code.

3.     The Defendant Real Property is believed to be subject to forfeiture
pursuant to 21 U.S.C. § 881(a)(7), as real property, including any right, title, and
interest (including any leasehold interest) in the whole of any lot or tract of land and
any appurtenances or improvements, which is used, or intended to be used, in any
manner or part, to commit, or to facilitate the commission of, a violation of violation
of subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention
and Control, and Title 21 – Food and Drugs, of the United States Code, punishable
by more than one year's imprisonment.

4.     The civil forfeiture claims made herein arise from a multi-state
investigation and prosecution of Oliver "Sonny" Maupin and others for conspiring to
manufacture and distribute marijuana, a Schedule I controlled substance.

## II.   **THE DEFENDANTS *IN REM***

5.     The Defendant Real Properties are residential real properties, described
as follows as follows:

   a.     Real property, and buildings and appurtenances thereto, located at 471
          Draper Valley Road, Selma, Oregon, County of Josephine, and more
          particularly described as follows:

          Parcel 2 of Partition Plat No. 2015-7, located in the Northwest Quarter of
          Section 12 and the Northeast Quarter of Section 11, Township 38 South,
          Range 8 West of the Willamette Meridian, Josephine County, Oregon.

b.    Real property, and buildings and appurtenances thereto, located at 1380 Deer Creek Road, Selma, Oregon, County of Josephine, and more particularly described as follows:

Beginning at the Northeast corner of the Southeast Quarter of Section 12, Township 38 South, Range 8 West, of the Willamette Meridian, Josephine County, Oregon; thence North 89° 29' West along the North line of said Southeast Quarter, 1328.36 feet to an iron monument set at the Northwest corner of the Northeast Quarter of the Southeast Quarter of said section; thence South 49° 47' 40" West, a distance of 704.47 feet to the Northerly right of way line of Deer Creek Road; thence Easterly along said right of way line to the East line of said section 12; thence North 0° 28' East 872.75 feet to the point of beginning. EXCEPTING THEREFROM: Beginning at the Northeast corner of the Southeast Quarter of Section 12, Township 38 South, Range 8 West, of the Willamette Meridian, Josephine County, Oregon; thence North 89° 29' West along the North line of said Southeast Quarter, 500 feet to a 5/8 inch iron rod; thence South 0° 28' West, 863.35 feet to a 5/8 inch iron rod, said point being the Northerly right of way line of Deer Creek Road; thence Easterly along said right of way line, the following courses and distances: South 85° 24' 18" East, 216.39 feet; North 89° 10' East, 242.84 feet; thence South 88° 23' East, 28.88 feet to a point on the East line of said Section 12; thence North 0° 28' East, 872.75 feet to the point of beginning.

6.    The record owner of the Defendant real properties is believed to be "Hard Guys, LLC" a Nevada Limited Liability Company, incorporated in approximately December 2004, solely owned and managed by Oliver "Sonny" Maupin.

## III.   JURISDICTION, VENUE, AND PROCEDURAL AUTHORITY

7.    This Court has jurisdiction over an action commenced by the United States as plaintiff, under 28 U.S.C. § 1345.

8.    This Court has original jurisdiction over this action for the recovery or enforcement of a fine, penalty, or forfeiture incurred under an Act of Congress, under 28 U.S.C. § 1355(a).

9.     This Court also has jurisdiction over this action because acts or omission giving rise to this civil forfeiture occurred in the Southern District of Iowa, therefore this action may be brought in this District, pursuant to 28 U.S.C. § 1355(b)(1)(A).

10.     Venue is proper in this District because this is a civil proceeding for the recovery of a pecuniary fine, penalty, or forfeiture, and is being prosecuted in the District where the action accrues and where the Defendant Real Property is found, as authorized by 28 U.S.C. § 1395(a) and (b).

11.     Venue is also generally proper in this District under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred in, or a substantial part of the property that is the subject of the action is situated in, this District."

12.     The general rules for civil forfeiture proceedings are set forth in 18 U.S.C. § 983.

13.     The general rules for civil forfeiture of real property are set forth in 18 U.S.C. § 985. They provide that the government shall initiate a civil forfeiture action against real property by filing a complaint for forfeiture, posting a notice of the complaint on the property, and serving notice on the property owner, along with a copy of the complaint. 18 U.S.C. § 985(c)(1)(A) – (C).  If the real property is properly posted, the court need not take any other action to establish in rem jurisdiction. 18 U.S.C. § 985(c)(3).

14.     Accordingly, the United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

    a.    Post notice of this action and a copy of the Complaint on the Defendant real properties; and

    b.    Serve notice of this action on the owner of the Defendant real properties and any other person or entity who may claim an interest in the defendant real properties, along with a copy of this Complaint; and

    c.    File *lis pendens* in the county records of the defendant real properties' status as a defendant in this *in rem* action.

## IV.   FACTS

15.     The Controlled Substances Act was enacted by Congress as Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

16.     The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

17.     Schedule I substances have a high potential for abuse, and have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of the drug under medical supervision. 21 U.S.C. § 812(b)(1)(A) - (C).

18.     Marijuana is a Schedule I controlled substance under federal law.

19.   Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance, unless authorized by law to do so.  21 U.S.C. § 841(a)(1).

20.   Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions.  21 U.S.C. § 846.

21.   At all times pertinent to this matter, none of the persons involved in manufacturing or distributing marijuana related to this case were authorized under federal law to do so.

22.   It is believed that, or will be after a reasonable opportunity for further investigation and discovery, evidence will show the Defendant's real property was used, and intended to be used, in various manners and parts, to commit, or facilitate the commission of, violations of Chapter 13, Subchapter 1, of Title 21, United States Code, punishable by more than 1 year imprisonment.

23.   At some point by at least approximately 2015, Kevin Hebbe and others were conspiring to distribute marijuana, a Schedule I controlled substances, in and around Davenport, Iowa.

24.   Around that time, Thy Thi Hoang introduced Kevin Hebbe to a source of marijuana, Lamai Szklanecki, who was living in California at the time.

25.   Shortly thereafter, Lamai Szklanecki sent to Kevin Hebbe and his associates approximately 10 pounds of marijuana, under an agreement where Lamai Szklanecki would give them the marijuana up "front" and be paid out of the proceeds when it sold.

26.     Lamai Szklanecki sent other marijuana to Kevin Hebbe in the Davenport, Iowa area around this time.

27.     To pay for this marijuana, Kevin Hebbe and two associates travelled to Las Vegas, Nevada with money to pay Lamai Szklanecki for marijuana she had previously fronted them.

28.     Thereafter, Lamai Szklanecki continued to send marijuana to the Davenport group, in amounts up to 15 pounds per transaction.

29.     Lamai Szklanecki, around the same time, implied to the Davenport, Iowa group that Oliver "Sonny" Maupin (hereinafter "Maupin"), who purchased both Defendant real properties in Oregon, was her partner.

30.     Lamai Szklanecki arranged for Maupin to give a sample of marijuana, in Las Vegas, to Kevin Hebbe's associates.

31.     After Lamai Szklanecki established herself in Oregon, as part of Maupin's manufacturing and distribution network, she started supplying the Davenport, Iowa group with larger and larger quantities of marijuana.

32.     At one point, the Davenport, Iowa group started ordering greater and greater quantities, including up to approximately 100 pounds or more of marijuana.

33.     When Lamai Szklanecki negotiated marijuana prices with the Davenport, Iowa group, she repeatedly explained she could not set or reduce prices on her own, because she had to get approval from her partner.

34.    At one point, Tuan Vu operated as a marijuana courier, transporting marijuana from Maupin's Oregon properties to the Davenport, Iowa group.

35.    "Hard Guys, LLC" is believed to be a Nevada Limited Liability Company, incorporated in approximately December 2004, solely owned and managed by Maupin.

36.    Maupin, doing business as, or otherwise acting as," Hard Guys, LLC," is believed to be the sole owner of the Defendant real properties.

37.    Maupin is believed to have paid approximately $325,000 for Defendant 471 Draper Valley Road, Selma, Oregon in June 2015.

38.    In approximately January 2016, Maupin leased 471 Draper Valley Road, Selma, Oregon, to Lamai Szklanecki.

39.    Maupin is believed to have paid approximately $285,000 for Defendant 1380 Deer Creek Road, Selma, Oregon in April 2015.

40.    Maupin knew that the tenants of the Defendant real properties were going to manufacture marijuana on each property, for the purpose of distributing it to other individuals.

41.    In 2015, Maupin asked an associated of his, Rick West, to travel to Oregon to check out some real properties Maupin wanted to purchase.

42.    One of the properties investigated by Rick West was the Defendant 1380 Deer Creek Road, Selma, Oregon.

43.     When Rick West was inspecting the Defendant 1380 Deer Creek Road, Selma, Oregon property at Maupin's direction, it looked like it had once been a "pot farm" or marijuana grow operation, but the property needed a lot of work to restore it so that it could be used for this purpose.

44.     Maupin bought the Defendant 1380 Deer Creek Road, Selma, Oregon property, and invested money under his control into the property to restore it, including paying Rick West and other contractors.

45.     Maupin was, essentially, the financier of the Oregon part of the marijuana grow and distribution conspiracy.

46.     In part, Rick West cleared out weeds on the property that had overtaken the marijuana growing areas.

47.     Rick West also worked around the same time with improving the other Defendant Real Property, 471 Draper Valley Road, Selma, Oregon for Maupin, at times with an associate of Maupin's, Lamai Szklanecki, so that it could be used to raise a marijuana crop.

48.     Maupin paid for all of the improvements on both properties.

49.     Shortly after Defendant 471 Draper Valley Road, Selma, Oregon was purchased by Maupin, he leased and/or rented it to Lamai Rose Szklanecki, knowing she was going to manufacture marijuana on the property.

50.     When discussing the marijuana manufacturing and distribution conspiracy, including pricing decisions, Lamai Szklanecki implied that Maupin was her partner.

51.     Maupin purchased Defendant 471 Draper Valley Road, Selma, Oregon as an investment property, and as a place where Lamai Szklanecki could grow marijuana to distribute to other people.

52.     Maupin and Lamai Szklanecki entered into an agreement where she paid him a portion of the proceeds earned from their marijuana manufacturing operation.

53.     After Maupin purchased Defendant 471 Draper Valley Road, Selma, Oregon, he invested money in improvements to the Defendant Real Property to make it better suited to grow marijuana, such as labor to grade the ground, PVC piping, the installation of two water tanks (2,550 gallon and 1,550 gallon tanks), an EZ trim machine, designed for the purpose of trimming marijuana, and directed some of his employees to obtain Oregon medical marijuana cards, which they did not need, and he did so for the purpose of attempting to make his marijuana grow operation look legitimate under Oregon law.

54.     On at least two occasions, Maupin travelled from his home in Las Vegas, Nevada to inspect improvements on the Oregon properties, which were intended to improve the grow operation.

55.   While Rick West was working on the Defendant Deer Creek property, Maupin instructed Rick West to get his Oregon marijuana grower's license and to start growing marijuana.

56.   Rick West instructed his employees to get Oregon medical marijuana patient cards, even though he did not know about any of them using marijuana.

57.   Maupin paid for all the expenses related to obtaining these medical marijuana patient cards.

58.   Rick West himself planted marijuana on the Defendant Deer Creek property.

59.   At the end of the 2015 growing season, Lamai Szklanecki was not happy with the marijuana grown by Rick West at the Defendant Deer Creek property, and she helped recruit "JS" to take over the marijuana grow operation there.

60.   Also in 2015, Lamai Szklanecki contacted Thy Hoang, who helped Lamai Szklanecki find customers for the Oregon marijuana in the Davenport, Iowa area.

61.   On March 9, 2017, law enforcement in Douglas County, Nebraska stopped a white 2017 Jeep Grand Cherokee for a traffic violation.

62.   The two occupants were members of the marijuana manufacturing organization or conspiracy discussed herein one of whom was Phi Thanh Nguyen.

63.    Based on observations made during this traffic stop, and suspicious statements by the two occupants of the rental car, law enforcement suspected the vehicle was involved in illegal activity.

64.    The driver gave law enforcement consent to search the vehicle.

65.    In the rear hatch of the vehicle, law enforcement located two large suitcases containing numerous heat-sealed bags of suspected marijuana.

66.    The suspected marijuana weighed 34,500 grams or 76.06 pounds, as packaged.

67.    A portion of the marijuana seized by law enforcement on March 9, 2016, was transported from one of the Defendant real properties by members of the conspiracy and was en route to Iowa.

68.    A federal search warrant was executed in Oregon on July 19, 2017 at Defendant 471 Draper Valley Road property, where agents discovered 94 live marijuana plants, and 114.6 kilograms of dried marijuana.

69.    During the same search, law enforcement discovered a 2016 contract between Maupin and "JS", and purportedly involving Lamai Szklanecki, which set forth the various roles of Maupin, Szklanecki, and "JS" in the marijuana grow operation on the Defendant 1380 Deer Creek Road, Salem, Oregon property.

70.    In 2015 or 2016, "JS" obtained Maupin's phone number from Lamai Szklanecki.

71.    "JS" and Maupin thereafter met in Anaheim, CA.

72.    "JS" agreed to grow medical marijuana for Maupin, but he understood he did not have to find patients.

73.    In 2016, "JS" planted 48 marijuana plants on the property.  He did not obtain a grower card or patient card, therefore he was not authorized under Oregon law to grow marijuana.

74.    Lamai Szklanecki supervised "JS's" marijuana grow operation from 2016 through 2017.

75.    Lamai Szklanecki distributed most of her portion of the Maupin marijuana grow operation to numerous people in Iowa, specifically to Davenport, Iowa.

76.    Maupin knew that Lamai Szklanecki was distributing marijuana from their Oregon operations to the Davenport, Iowa part of the conspiracy, and he knowingly received approximately $100,000 in cash from the proceeds generated by such sales.

77.    On July 19, 2017, law enforcement executed a search warrant for 632 West 15th Street, Davenport, IA, the residence of Phi Nguyen, who had previously been caught, and arrested, in Douglas County, Nebraska on March 9, 2017 with marijuana.

78.    At Nguyen's residence, law enforcement discovered 18 individually packaged, high-grade marijuana.  Some of the packaged marijuana was labelled by its strain, and one pound described as "Gorilla Glue," a marijuana strain which came

from Lamai Szklanecki's grow operation at the Defendant Draper Valley Road property.

79.    On or about August 15, 2017, Jennifer Hoang was charged in the U.S. District Court for the Southern District of Iowa with conspiring with other individuals between approximately February 2015 to approximately June 2017, in Scott County, Iowa, to knowingly manufacture and distribute a mixture and substance containing marijuana and at least 100 marijuana plants.

80.    On or about August 15, 2017, Lamai Rose Szklanecki was charged in the U.S. District Court for the Southern District of Iowa with conspiring with other individuals between approximately February 2015 to approximately June 2017, in Scott County, Iowa, to knowingly manufacture and distribute a mixture and substance containing marijuana and at least 100 marijuana plants.

81.    On or about August 15, 2017, Douglas Trong Tran was charged in the U.S. District Court for the Southern District of Iowa with conspiring with other individuals between approximately February 2015 to approximately June 2017, in Scott County, Iowa, to knowingly manufacture and distribute a mixture and substance containing marijuana and at least 100 marijuana plants.

82.    On or about August 15, 2017, Davey John Le was charged in the U.S. District Court for the Southern District of Iowa with conspiring with other individuals between approximately February 2015 to approximately June 2017, in Scott County, Iowa, to knowingly manufacture and distribute a mixture and substance containing marijuana and at least 100 marijuana plants.

83.   On or about August 15, 2017, Phi Thanh Nguyen was charged in the U.S. District Court for the Southern District of Iowa with conspiring with other individuals between approximately February 2015 to approximately June 2017, in Scott County, Iowa, to knowingly manufacture and distribute a mixture and substance containing marijuana and at least 100 marijuana plants.

84.   On or about August 15, 2017, Randy Troung Wardrip was charged in the U.S. District Court for the Southern District of Iowa with conspiring with other individuals between approximately February 2015 to approximately June 2017, in Scott County, Iowa, to knowingly manufacture and distribute a mixture and substance containing marijuana and at least 100 marijuana plants.

85.   On or about August 15, 2017, Thy Thi Hoang was charged in the U.S. District Court for the Southern District of Iowa with conspiring with other individuals between approximately February 2015 to approximately June 2017, in Scott County, Iowa, to knowingly manufacture and distribute a mixture and substance containing marijuana and at least 100 marijuana plants.

86.   On about September 20, 2017, a Superseding Indictment was filed in the U.S. District Court for the Southern District of Iowa which continued to charge the foregoing individuals with the same conspiracy, along with other crimes, respectively.

87.     On November 8, 2017, a Second Superseding Indictment was filed in the U.S. District Court for the Southern District of Iowa which continued to charge the foregoing individuals with the same conspiracy, along with other crimes, respectively, and also charged Kevin Thomas Hebbe, Oliver Sonny Maupin, and Bao Quoc Huynh with being involved in the same conspiracy to manufacture and distribute marijuana.

88.     On December 12, 2018, a Third Superseding Indictment was filed in the U.S. District Court for the Southern District of Iowa, which pertained to Defendant Hebbe, added Defendant Tuan Thanh Vu, extended the time of the conspiracy to November 2018, but left the charges against Oliver Sonny Maupin unchanged.

89.     In the criminal case discussed above (*U.S. v. Jennifer Hoang et al.*, 3:17-cr-00070), the following individuals pled guilty to their involvement in the conspiracy to manufacture and distribute marijuana, and agreed to forfeit their interest, if any, in the Defendant Real Properties:

| Defendant | Date of Plea Agreement | Consent to Forfeit His/Her Interest, If Any, In The Defendant Real Properties |
|---|---|---|
| Lamai Rose Szklanecki | 02/06/18 (DCD 260) | Paragraphs 1, 17 - 20 |
| Douglas Trong Tran | 02/09/18 (DCD 274) | Paragraphs 1, 18 - 21 |
| Davey John Le | 02/12/18 (DCD 282) | Paragraphs 1, 17 – 20 |
| Jennifer Hoang | 02/12/2018 (DCD 292) | Paragraphs 1, 16 - 19 |
| Phi Thanh Nguyen | 04/20/18 (DCD 347) | Paragraphs 1, 17 - 20 |

90.   On June 28, 2019, Maupin testified under oath in the federal prosecution brought against him, *United States v. Maupin*, 3:17-cr-00070 (S.D. Iowa).

91.   On June 28, 2019, Maupin admitted under oath he made a decision during the time he was involved in the marijuana grow operation at issue in this case to let Lamai Rose Szklanecki grow marijuana on one of the Defendant Real Properties.

92.   On June 28, 2019, Maupin admitted under oath that he knew, around the time he and his associates started their marijuana grow operation in Oregon, that the Defendant Real Property on Draper Road had previously been used to grow marijuana.

93.   On June 28, 2019, Maupin testified under oath that around the time he and his associates started their marijuana grow operation in Oregon, he spoke with "RW" about using the Defendant Real Property on Deer Creek for this purpose.

94.   On June 28, 2019, Maupin testified that, during the time he was involved in the marijuana grow operation at issue in this case, "RW" used Maupin's Home Depot credit card to purchase materials and supplies used, and intended to be used, for the marijuana grow operation on the Deer Creek property, such as PVC pipe.

95.   On June 28, 2019, Maupin admitted under oath that, during the time he was involved in the marijuana grow operation at issue in this case, he had lease agreements with Lamai Rose Szklanecki, "RW", and "JS" after he bought the

Defendant Real Properties for them to grow marijuana on the Defendant Real Properties, and pay him out of the proceeds.

96.   On June 28, 2019, Maupin testified that he, and not an attorney or other person, wrote or drew up the lease agreements with Lamai Rose Szklanecki, and "JS" related to the marijuana grow operations.

97.   On June 28, 2019, Maupin admitted under oath that, during the time he was involved in the marijuana grow operation at issue in this case, he invested approximately an additional $230,000 in rebuilding costs into the Defendant Real Properties, including improvements related to building the marijuana grow on the properties.

98.   On June 28, 2019, Maupin admitted he knew, during the time he was involved in the marijuana grow operation at issue in this case, that Lamai Rose Szklanecki, sent marijuana using the postal system to his residence in Nevada.

99.   On June 28, 2019, Maupin testified that, during the time he was involved in the marijuana grow operation at issue in this case, he put large sums of money into the bank account of Lamai Rose Szklanecki, while he was partnered with her in the marijuana grow operation.

100.  On June 28, 2019, Maupin testified that, during the time he was involved in the marijuana grow operation at issue in this case, he wanted to educate himself on the business aspects of growing marijuana when he was involved with it, and he subscribed to magazines that discussed the topic and engaged in other research on marijuana grow operations.

101.   On June 28, 2019, Maupin testified that while he was involved in the marijuana grow operation, he knew it was illegal in every state that permits residents to grow marijuana for them to export it out of state.

102.   On June 28, 2019, Maupin testified he knew, at the time he was engaged in growing marijuana in Oregon, that it was against federal law for him and others to manufacture marijuana.

103.   On June 28, 2019, Maupin testified he entered into the agreements with Lamai Rose Szklanecki, "RW" and "JS" to grow marijuana knowing at the time it was against federal law for them to do so.

104.   On June 28, 2019, Maupin testified that some of the paperwork he reviewed from the State of Oregon during the time he was involved in the marijuana grow operation at issue in this case advised anyone reading it that marijuana growing and distribution was, and is, against federal law.

105.   On June 28, 2019, Maupin testified that during the time he and Lamai Rose Szklanecki were involved with growing marijuana on one or both of the Defendant Real Properties, he received maybe $90,000 to $100,000 in cash payments from her.

106.   On June 28, 2019, according to the filed verdict form, a federal jury in the U.S. District Court for the Southern District of Iowa unanimously found Oliver "Sonny" Maupin guilty beyond a reasonable doubt of conspiring to manufacture and distribute marijuana, in the Southern District of Iowa and elsewhere.

107.   On June 28, 2019, according to the filed verdict form, a federal jury in the U.S. District Court for the Southern District of Iowa found beyond a reasonable doubt that Maupin conspired to manufacture and distribute 100 kilograms or more of marijuana, in the Southern District of Iowa and elsewhere.

108.   On June 28, 2019, according to the filed verdict form, a federal jury in the U.S. District Court for the Southern District of Iowa found beyond a reasonable doubt that Maupin conspired to manufacture 100 or more marijuana plants, in the Southern District of Iowa and elsewhere.

109.   Based on the foregoing facts, and others, the available evidence shows that during the time frame discuss herein, Maupin used the Defendant Real Properties, and intended to use them, in a manner or part, to commit, and facilitate the commission of, one or more violations of Subchapter I, of Title 21, United States Code, including, but not limited to, possession of marijuana with the intent to distribute, manufacturing of marijuana, distribution of marijuana, and conspiracy to possess with the intend to distribute, manufacture, and distribute marijuana, a Schedule I controlled substance under federal law.

## V.  CLAIM FOR RELIEF

WHEREFORE, the United States prays that the Defendant Real Properties be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: _____

Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: _8th_ day of _August_, 2019.

_____

Jon Johnson, Task Force Officer
U.S. Drug Enforcement Administration

22